**ÆTNA LIFE INS. CO. et al. v. BREWER.**

(Court of Appeals of District of Columbia. Submitted February 1, 1926. Decided May 3, 1926.)

No. 4274.

1. **Insurance 26—Declaration held to sufficiently allege that individual defendant was acting in course of and within scope of his employment in business of corporate codefendant foreign insurance company at time of making defamatory statements.**

In action against insurance company and another for slander, allegation in declaration that individual defendant was agent and general manager of insurance company's branch office, and that company, through such agent, uttered and published defamatory statements set out, *held* sufficient allegation that individual defendant was acting in course of and within scope of his employment.

2. **Insurance 26—Whether general manager of branch office of defendant foreign insurance company was acting in course of employment at time of making defamatory statements held for jury.**

Evidence that defamatory statements complained of were made by general manager of branch office of defendant insurance company to discourage former patrons from doing business with plaintiff *held* sufficient to go to jury on question whether general manager was acting in course of and within scope of his employment.

3. **Corporations 406(1), 423.**

Corporation is liable for acts of its agent, either in contractu or in delicto, in course of its employment in its business.

4. **Corporations 506—Corporation may be joined as party defendant with an employee in action for damages for slander.**

Corporation, liable under doctrine of respondeat superior for willfully slanderous utterances of its employee within the course of his employment, may be joined as party defendant with the employee in an action for damages.

5. **Insurance 93—Insurance corporation held not liable for slanderous utterances of chief clerk of branch office, made without authority of general manager of that office.**

Insurance company *held* not liable for slanderous statements by chief clerk in branch office, in absence of any evidence that clerk's utterances were authorized by general manager in charge of office.

6. **Insurance 93—Insurance company held not liable for punitive damages for slanderous utterances of employee not authorized or ratified.**

Insurance corporation, liable under doctrine of respondeat superior for slanderous utterances by general manager of its branch office, *held* not liable for punitive damages, ·in absence of evidence that it authorized the slanderous utterances or intentionally ratified them.

Appeal from the Supreme Court of the District of Columbia.

Action by Irving S. Brewer against the Ætna Life Insurance Company and C. K. Mount. Judgment for plaintiff, and defendants appeal. Judgment as to last-named defendant affirmed, and as to first-named defendant affirmed on condition remittitur be filed; otherwise, reversed and remanded.

B. S. Minor, H. P. Gatley, H. B. Rowland, J. S. Easby-Smith, and R. B. Fleharty, all of Washington, D. C., for appellants.

W. G. Gardiner and F. J. Hogan, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This was an action in slander, brought by the appellee, Brewer, as plaintiff, against the Ætna Life Insurance Company, a corporation, and C. K. Mount, as defendants, upon a declaration containing four counts, each claiming damages in the sum of $50,000. Demurrers to this declaration were overruled, and defendants pleaded the general issue. The jury returned a verdict against both defendants upon the first and second counts in the sum of $5,000 on each count. Upon the third count judgment was entered for defendants, and it requires no further mention here. Upon the fourth count the jury returned a verdict in the sum of $5,000 against the defendant company alone. The defendants have appealed.

In the first count the plaintiff in substance alleges: That at and before the times now in question the defendant company maintained a branch office in the District of Columbia, and that defendant Mount was and is the general manager of such office, having ex-

clusive control thereof in the District. That for a long time prior to the grievances complained of, the plaintiff was employed by the defendant company at this branch office, and always conducted himself in a faithful and law-abiding manner, and enjoyed a good reputation for honesty in the community; but that the defendants contriving and maliciously intending to injure plaintiff in his good name and bring him into public scandal and disgrace, and oppress and ruin him, the defendant company in August, 1915, "did, among other things, through its agent and general manager, the said defendant C. K. Mount, utter, speak, and say the following false, malicious, scandalous, and defamatory words of and concerning the plaintiff in the presence of at least one person, without any reasonable or probable cause so to do," to wit: "I can show you that Brewer does not deserve the confidence that you have in him. He has been guilty of forgery. He forged my name to a check and got the money. He is also short in his accounts, and I want you to read these affidavits, which will show you that he has been guilty of other crimes, and that you should not, and I am sure, after reading them, that you will not, continue having confidence in him or do business with him. * * * He was also mixed up in a premium that had recently been stolen from the company by one Hartnett." That all of these statements were false, and were known to defendants when uttered to be false, and were intended to wrongfully injure and ruin plaintiff, to his damage in the sum of $50,000.

The second count is similar to the first in substance, except that it relates to a different publication. The fourth count sets out a similar publication, and alleges that it was made by the defendant, the Ætna Life Insurance Company, "through one Miller, its agent with authority from its general manager, the said defendant C. K. Mount."

[1] The appellant company contends that it is not alleged in the declaration, and that there is no evidence in the case tending to show, that the defendant Mount, in uttering the words set out in the declaration and testified to by the plaintiff's witnesses, was acting in the course of and within the scope of his employment in the business of the defendant company, or that the utterances were made by the express authority of, or were ever ratified by, the defendant company or any of its officers or directors.

In answer to this criticism of the counts of the declaration we may say, without intending to commend them as forms of pleading, that they are sufficient to resist a demurrer. In the first three counts it is alleged in substance that Mount was the agent and general manager of the company's branch office in the District of Columbia, having exclusive control of said branch office within the District, and that, the defendants maliciously intending to injure the plaintiff, the defendant company, through its said agent and general manager, did utter and publish the certain defamatory words complained of. These statements fairly signify that the words in question were spoken by Mount as agent and general manager for and on behalf of the company, both of them at that time maliciously intending to injure the plaintiff thereby. The fourth count is not essentially different in these particulars. If a variance appears between these allegations and the proofs, we do not believe the variance to be fatal.

[2] As to the testimony in the case, it fails to show that the utterances in question were made by the express authority of, or were ratified by, the defendant company or any of its officers or directors. Nevertheless it tends to show that the defamatory words were uttered by Mount while acting in the course of and within the scope of his employment in the business of the defendant company. Mount was the general agent of the defendant company in charge of its branch office in the District of Columbia, and engaged among other duties in soliciting business for it in the District. The testimony introduced in support of the first count tends to show that, after discharging Brewer as cashier and underwriter, Mount escorted Brewer's successor to the offices of certain former patrons of the company, in order to introduce him with a view to securing future business from them; that in the meantime Brewer had set up for himself in the District as a solicitor and broker of insurance, and thus had become a competitor of the defendant company in Mount's territory; that the persons to whom Mount introduced Brewer's successor spoke in a friendly way about Brewer, and expressed a purpose to continue to patronize him; and that Mount later produced two affidavits in reference to Brewer, and uttered the defamatory words in question, at the same time soliciting the continuance of the customer's patronage; that subsequently in his own office Mount substantially repeated the defamatory statements in the presence of the same and another person, and requested them to spread the report abroad among insurance people so as to deprive Brewer of their pat-

ronage. The testimony in support of the second count was similar in general to that under the first. We think that this testimony was entitled to go to the jury in relation to the claim that Mount was then acting in the course of and within the scope of his employment in the business of the defendant company.

[3] It is settled law "that for acts done by the agents of a corporation, either in contractu or in delicto, in the course of its business, and of their employment, the corporation is responsible, as an individual is responsible under similar circumstances." Philadelphia & W. B. R. Co. v. Quigley, 62 U. S. (21 How.) 202, 16 L. Ed. 73. This doctrine has been approved and reaffirmed by the Supreme Court in many cases. Washington Gaslight Co. v. Lansden, 172 U. S. 534, 544, 19 S. Ct. 296, 43 L. Ed. 543. "It necessarily follows that a corporation is liable in slander if slanderous words are uttered by an officer, agent, or servant of a corporation in the course of his employment, as well as when slanderous words are uttered by the direct authority of the stockholders or directors." Mills v. W. T. Grant Co., 233 Mass. 140, 123 N. E. 618. "Plaintiff was in charge of one of defendant's stores, and while defendant's manager was making an inventory left the store without explanation. M., a friend of plaintiff, stopped at the store and inquired for him, and the manager told him that plaintiff had acted in a very peculiar way and went off without saying anything, and that his stock and his cash were short. Held, that defendant was liable for the manager's language, as he was engaged in its business and acting in its behalf when the words were spoken, and they referred to plaintiff's acts in the work for which he was employed." Grand Union Tea Co. v. Lord, 231 F. 390, 145 C. C. A. 384, Ann. Cas. 1918C, 1118 (2, syllabus); United Cigar Stores Co. v. Young, 36 App. D. C. 390; Axman v. Washington Gaslight Co., 38 App. D. C. 150.

[4] It is contended by the appellants that there can be no joint utterance of a slander, except where defendants are sued as conspirators, and consequently that there was a misjoinder of parties defendant in this case. It cannot be denied that the authorities upon this subject are conflicting, but we believe the better rule to be that, if a corporation under the doctrine of respondeat superior is responsible for the willfully slanderous utterances of its employé while acting for it within the scope of his employment, a joint action may be maintained against both the corpora-

tion and the employé by the injured party. Cotton v. Fisheries Product Co., 177 N. C. 56, 97 S. E. 712; Hypes v. Southern R. Co., 82 S. C. 315, 64 S. E. 395, 21 L. R. A. (N. S.) 873, 17 Ann. Cas. 620; Waters-Pierce Oil Co. v. Bridwell, 103 Ark. 345, 147 S. W. 64, Ann. Cas. 1914B, 837; Hussey v. Norfolk Southern R. Co., 98 N. C. 34, 3 S. E. 923, 2 Am. St. Rep. 312; Green v. Davies, 182 N. Y. 499, 75 N. E. 536, 3 Ann. Cas. 310; Washington Gaslight Co. v. Lansden, 172 U. S. 534, 19 S. Ct. 296, 43 L. Ed. 543; Haney Mfg. Co. v. Perkins, 78 Mich. 1, 43 N. W. 1073.

[5] We come next to consider the verdict and judgment recovered by the plaintiff upon the fourth count of the declaration. It is alleged in that count that the company uttered the alleged defamatory statement therein set out, as follows, to wit: That the defendant company "did, among other things, through one Miller, its agent with authority from its general manager, the said defendant C. K. Mount, utter, speak, and say the following false, malicious, scandalous, and defamatory words of and concerning the plaintiff in the presence of at least one person, without any reasonable or probable cause so to do, that is to say" (here follow the words in question). The record, however, contains no evidence to the effect that Mount ever authorized Miller to utter any words whatever concerning the plaintiff. It appears that Miller was employed as chief clerk of the company at its branch office in the District of Columbia, and that he uttered the words in question when he called at the office of Mr. Sullivan to deliver a renewal policy. He was told that the renewal insurance had already been placed with Brewer, whereupon he uttered the words in question. In our opinion, these facts were not sufficient to go to the jury in support of the claim set out in the fourth count, and accordingly the verdict of the jury against the company on that count cannot be sustained.

[6] A question also arises upon the record in relation to the finding of the jury for punitive damages against the defendant company. A special verdict upon the first and second counts was returned by the jury, under instructions from the court, and in response to the questions submitted to them the jury found for the plaintiff and against both defendants in the sum of $5,000 upon each count, of which the sum of $1,500 was specified in each count as compensatory damages, and the sum of $3,500 in each count as punitive damages. It is contended by the appellant company that no punitive damages can

lawfully be adjudged against it in this case, in view of the fact that there is no evidence tending to show that it actually authorized. the defendant Mount to utter the slanderous words attributed to him, or intentionally ratified the utterance of the ·same, nor that the defendant company, through its officers or directors, had or entertained any malice against the plaintiff, or acted with careless or reckless indifference to, or disregard of, his rights and feelings.

We think that, under circumstances such as are disclosed by the record, the rule is established that punitive damages cannot be assessed against the employing corporation. "Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent." Lake Shore & M. S. Ry. Co. v. Prentice, 147 U. S. 101, 107, 13 S. Ct. 261, 263 (37 L. Ed. 97). The better rule on this subject seems to be that a principal will not be held liable in exemplary damages for the act of an agent, unless it be shown that he authorized or approved the act for which the exemplary damages are claimed, or that he approved of or participated in the wrong of which his agent has been guilty, or that he has not exercised proper care in selecting his servants. 13 Cyc. 114.

Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment to the offender, and as a warning to others, can only be awarded against one who has participated in the offense; and the principal, therefore, although, of course, liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or mali-

cious intent on the part of the agent. A. S. Abell Co. v. Ingham, 43 App. D. C. 582 (2, syllabus); Woodward v. Ragland, 5 App. D. C. 220; Norfolk & W. S. B. Co. v. Davis, 12 App. D. C. 306; 8 R. C. L. p. 597, § 143; Pacific P. & N. Co. v. Fielding, 136 F. 577, 69 C. C. A. 325; Toledo, St. L. & W. R. Co. v. Gordon, 143 F. 95, 74 C. C. A. 289; Norfolk & P. Traction Co. v. Miller, 174 F. 607, 98 C. C. A. 453.

In the instant case there is no proof that the alleged slanderous utterances of Mount were ever authorized or approved of by the company through any of its officers or directors. Mount was not an officer of the company, but was simply an employé in charge of one of its branch offices. A correct application of the rule, accordingly, does not sustain the assessment of punitive damages against the defendant company.

The appellants have together presented 96 assignments of error in this appeal. We cannot undertake to discuss them separately, but upon a consideration of the entire record we are satisfied that the judgment rendered in the lower court against the defendant Mount was not erroneous, but that the judgment against the defendant company was erroneous in the sum of $5,000, because of the verdict of the jury upon the fourth count as aforesaid, and in the further sum of $7,000, because of the inclusion therein of the punitive damages found by the jury in their verdict .upon the first and second counts as aforesaid.

The judgment of the court accordingly is that the judgment of the lower court against the defendant Mount is affirmed, and that, if the appellee, Brewer, shall within 30 days from and after this date enter a remittitur in the sum °of $12,000 upon the judgment rendered below against the defendant company, the judgment for the residue thereof (to wit, the sum of $3,000 and costs) shall be affirmed; otherwise, the said judgment shall be reversed, and the cause as to the defendant company be remanded. The costs of this appeal are to be assessed against the appellants and the appellee in equal one-third shares.